IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
: CASE NO.  1:09 CV 02332
:
DAMETERESE RANSAW, :
: MEMORANDUM OF OPINION AND
Plaintiff, : ORDER
:
-vs- :
:
:
LEE LUCAS, et al., :

Defendants.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

  This matter comes before the Court on the parties' objections to United States Magistrate Judge Nancy A. Vecchiarelli's recommendation that the defendants' motions to dismiss be granted in part and denied in part. As described in detail below, the recommendation of the Magistrate Judge will be accepted in part and rejected in part. Surviving this order are the plaintiff's constitutional claims of malicious prosecution, fabrication of evidence, and conspiracy against defendants Chuck Metcalf, Larry Faith, and Matt Mayer. All other claims are dismissed.

**I. Background**

The Court adopts the following background facts, as set forth in the Magistrate Judge's report and recommendation:

> In late 2004, Richland County Sheriff's Office ("RCSO") in the Mansfield, Ohio area began investigating drug trafficking in Mansfield. This investigation was known as "Operation Turnaround." In about January 2005, the RCSO in Mansfield recruited and developed an informant, Jerrold Bray ("Bray"), for use in drug investigations. Metcalf supervised Bray, and Faith supervised Metcalf. The RCSO then used Bray to make drug buys from traffickers in the Mansfield area.
>
> On or around February 22, 2005, Bray told Metcalf that he had seen Ransaw with cocaine at 171 W. Fourth St., Mansfield, Ohio ("171 W. 4th"). Faith and another RCSO officer set up a surveillance of 171 W. 4th and observed traffic patterns consistent with dealing drugs. On March 4, 2005, Bray made a telephone call to set up a controlled drug deal. He told the observing officers that he was telephoning Ransaw; the officers did not verify if this was true. Bray made a controlled purchase of crack cocaine on March 4, 2005. Metcalf and Mayer observed the buy, and Mayer said that the seller looked like Ransaw.
>
> On March 7, 2005, Bray told Metcalf that Ransaw had bought 2.5 kilograms of cocaine. Bray told Metcalf on March 21, 2005 that he had seen Ransaw at 151 W. 4th Street with 7 kilograms of cocaine. On March 22, 2005, Metcalf applied to Judge Philip Meyer of the Richland County Common Pleas Court for a search warrant upon his own affidavit. The places to be searched were the first upstairs apartment at 171 W. 4th and the apartment at 151 W. Fourth Street ("151 W. 4th"). The affidavit also noted that although Ransaw had given 138 Boughton Avenue to the probation authorities as his official address, Bray stated that Ransaw was actually staying at 171 W. 4th. The court issued the warrant on March 22, 2005.
>
> On March 22, 2005, Bray made a telephone call setting up a second drug deal from a person he identified as Ransaw. The parties arranged for the purchase to take place at 151 W. 4th Street. Later that day, Bray purchased cocaine from a person he identified as Ransaw. Shortly afterward, officers executed search warrants at 171 W. 4th and at 151 W. 4th Street. State parole officers also conducted an administrative search at 138 Boughton Avenue, which Metcalf had learned was the address Ransaw had given to probation authorities. The detectives seized 73 grams of cocaine and 8 grams of crack cocaine at 151 W. 4th Street. They also found three pistols, marijuana, and scales. A small amount of marijuana was found at 171 W. 4th Street, and no drugs were found at 138 Boughton Avenue. Bray's statements and the statements of Marlon Brooks ("Brooks"), who was arrested at 151 W. 4th Street, connected Ransaw to 151 W.

> 4th Street and the drugs found at that address. The detectives then arrested Ransaw.
>
> In August or September 2005, the Drug Enforcement Administration ("DEA") Task Force in Cleveland, at the request of the RCSO, began to work with the RCSO to investigate cocaine and crack cocaine trafficking in and around Mansfield. Also in August or September of 2005, the DEA registered Bray as a DEA informant. On November 8, 2005, Lucas testified before a grand jury regarding drug dealing in the Mansfield area.

Report and Recommendation, pp. 2-4 (citations omitted).

On 9 November 2005, Mr. Ransaw was charged with violations of the federal criminal drug laws by an indictment returned in <u>United States v. Dwayne Nabors</u>, Case No. 1:05-cr-0537 (N.D. Ohio). A superseding indictment followed on 15 March 2005. Mr. Ransaw was charged in five counts based on alleged criminal activities that occurred on the 4th and 22nd of March 2005, dates prior to DEA involvement in the case.

On 19 June 2006, Mr. Ransaw entered a plea of guilty to conspiracy to possess with intent to distribute with respect to a controlled purchase of crack cocaine on 22 March 2005.  Mr. Ransaw received a sentence of 41 months incarceration. In accordance with his plea agreement, Mr. Ransaw testified against Nabors and other defendants in the case. During his testimony, he admitted to his involvement in a criminal conspiracy and numerous drug transactions.

On 23 January 2008, after the informant Bray pled guilty to two counts of perjury and five counts of deprivation of civil rights with respect to his actions in Operation Turnaround, the United States moved to dismiss the charges in the <u>Nabors</u> case. The court granted the government's motion to dismiss, and, on 25 January 2008, Mr. Ransaw's conviction and sentence were vacated. The superseding indictment was dismissed.

3

On 12 May 2009, Special Agent Lucas, whose grand jury testimony led to the Nabors indictment, was charged with violating 18 U.S.C. §§ 1503(a) (Obstruction of Justice), 1001(a)(3)(Knowing Creation of a False Government Document), 1623(a) (False Testimony and/or creation of a false material declaration), and 242 (deprivation of rights under color of law), in connection with his conduct in Operation Turnaround. United States v. Lucas, 1:09-cr-0222 (N.D. Ohio). These charges were unrelated to the drug transactions involving Mr. Ransaw. On 5 February 2012, after a five week jury trial, Special Agent Lucas was acquitted of all charges.

Mr. Ransaw filed a complaint in the present matter on 7 October 2009, alleging constitutional and state law torts based on the defendants' actions taken in relation to his prosecution in the Nabors case. The defendants filed motions to dismiss and motions for summary judgment based on qualified immunity. In response to the motions for summary judgment, the plaintiff sought to take discovery pursuant to Federal Rule 56(f). The motion was granted, and the parties were given 60 days to conduct discovery on the issue of qualified immunity; the defendants' motions were terminated; the plaintiff was ordered to file an amended complaint outlining with particularity each violation of his constitutional rights; and the defendants were given the opportunity to renew their dispositive motions within fourteen days of the close of discovery. (Doc. 92).

Mr. Ransaw amended his complaint on 29 February 2012, bringing claims of Fourth Amendment malicious prosecution, fabrication of evidence, conspiracy, and Fifth Amendment Due Process pursuant to 42 U.S.C. § 1983 and Bivens against all the individual defendants; state law claims of false imprisonment, malicious prosecution, and intentional infliction of emotional distress against Metcalf, Faith, and Mayer; and §

4

1983 and respondeat superior claims against the City of Cleveland and Richland County. The defendants filed motions to dismiss on the ground that the amended complaint was insufficiently pled.

After briefing, the motions were referred to United States Magistrate Judge Nancy A. Vecchiarelli for report and recommendation. The Magistrate Judge recommended dismissing claims against defendants Lucas and Cross in their official capacities for lack of subject matter jurisdiction; dismissing claims against defendant Verhiley in his official capacity for lack of personal jurisdiction; denying defendants Metcalf's, Mayer's, and Faith's motions to dismiss Mr. Ransaw's § 1983 claims for fabrication of evidence and conspiracy, and his state law claim for intentional infliction of emotional distress; denying Richland County's motion to dismiss Mr. Ransaw's Monell claim as to it; and granting the defendants' motions to dismiss as to all other claims. Mr. Ransaw filed objections (Doc. 117), as did Metcalf, Faith, Mayer and Richland County (Doc. 116).

**II. Standards**

Pursuant to Local Rule 72.3(b), "[a]ny party may object to a Magistrate Judge's proposed findings, recommendations or report . . . within fourteen (14) days after being served with a copy thereof . . . ." The Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." Local Rule 72.3(b).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id at 678. Plausibility requires more than facts which permit the mere possibility of liability. Rather, a plaintiff must plead sufficient factual matter to show "that the pleader is entitled to relief." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possiblity and plausibility of entitlement to relief." Id. (internal quotation marks omitted).

**III. Discussion**

    **A. Absolute Immunity**

First, consistent with the Magistrate Judge's recommendation, Mr. Ransaw's constitutional claim of fabrication of evidence must be dismissed as to Lee Lucas because Special Agent Lucas is absolutely immune from these claims pursuant to Rehberg v. Paulk, 132 S.Ct. 1497 (2012). Further, it is the Court's view that Special Agent Lucas is entitled to immunity with respect to the plaintiff's claims of malicious prosecution and conspiracy.

In Rehberg, the Supreme Court of the United States held that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." Id. at 1506-07. Further, "this rule may not be circumvented by claiming that a grand jury

6

witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." Id.

In this instance, Mr. Ransaw does not dispute the basic contours of the rule set forth in Rehberg. He maintains however that Rehberg should not apply here because the rule "does not provide immunity for malicious prosecution claims arising out of evidence that is not related to the testimony." He argues that the allegation that "Lucas participated in and influenced the initiation and maintenance of charges against Plaintiff by consistently presenting Bray to the prosecuting agents as a reliable informant despite Lucas' knowledge that Bray was not trustworthy" fit within the exception he describes.

In the Court's view, Lee Lucas's alleged presentation of Bray to prosecutors as a reliable informant falls within the rule of Rehberg. In Rehberg, the Court noted that "[i]n the vast majority of cases involving a claim against a grand jury witness, the witness and the prosecutor conducting the investigation engage in preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony." Rehberg v. Paulk, 132 S. Ct. 1497, 1506-07(2012). A grand jury witness is absolutely immune from legal challenges based on this preparatory activity. Id. In this instance, the alleged discussions between Lucas and prosecutors prior to his grand jury testimony is the sort of preparatory activity described in Rehberg. As a consequence, Lucas is absolutely immune from Mr. Ransaw's Bivens claims.

**B. Malicious Prosecution**

Mr. Ransaw brings claims of malicious prosecution in violation of the Fourth Amendment against the federal defendants under Bivens and against the state actors under 42 U.S.C. § 1983 (Counts I & II). The Magistrate Judge was of the view that the malicious prosecution claim is duplicative of Mr. Ransaw's more narrow claim of fabrication of evidence. She accordingly recommended that the broader duplicative claim be dismissed.

Mr. Ransaw argues that this recommendation is erroneous. In his view, the malicious prosecution claim is independent of the fabrication of evidence claim, because the malicious prosecution claim depends on the allegation that he was prosecuted without probable cause. To prove malicious prosecution, a plaintiff must demonstrate, *inter alia*, that there was a lack of probable cause for the prosecution. See Sykes v. Anderson, 625 F.3d 294, 309 (6th Cir. 2010). With respect to this issue, Mr. Ransaw states the proposition that probable cause is absent where law enforcement fails to adequately corroborate the tip of an informant whose reliability is questionable, in accordance with Illinois v. Gates, 462 U.S. 213, 244 (1983). He maintains that he adequately pled an absence of probable cause because

> each Defendant knew that: any probable cause in this case was wholly dependent on Bray's reliability; and Bray had no reliability whatsoever because throughout the larger investigation, cheated, attempted to steal from law enforcement, dealt his own drugs, falsely identified suspects, and lied with abandon.

(Doc. 117, p.11).

In support, Mr. Ransaw directs the Court's attention to paragraphs 32-37 of the Amended Complaint, which allege that "[a]ll the Defendants knew and covered up the

8

fact that Mr. Bray had, on at least one occasion, attempted to steal money from the government during a supposedly controlled drug deal"; and that "[t]he Defendants had reason to know that Mr. Bray deliberately misidentified targets during numerous drug deals." (Amended Complaint, ¶¶36-37).

In the Court's view, based on the complaint it is plausible that the defendants knew Mr. Bray to be an unreliable informant. Further, Mr. Ransaw has pled sufficient factual material showing that the defendants, despite their alleged knowledge of Bray's unreliability, failed to adequately corroborate Mr. Bray's information in accordance with Illinois v. Gates and related case law. In paragraphs 18-31 of the amended complaint, Mr. Ransaw makes numerous allegations that the defendants failed to corroborate anything that Bray told them. In sum, Mr. Ransaw has made a plausible case that probable cause was lacking in this instance

Further, Mr. Ransaw sufficiently pleads that some (but not all) of the defendants made, influenced, or participated in a decision to prosecute him, which is a necessary element of a malicious prosecution claim. See Sykes, 625 F.3d at 309. The Court considers the notion of "participation" "within the context of tort causation principles." Id. at 309 n. 5. "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." Id. In this instance, Metcalf, Faith, and Mayer each had a role in bringing the case against Mr. Ransaw. These three defendants orchestrated two controlled drug buys with the plaintiff, and they presented the results of their investigation to Lucas, who later testified about Mr. Ransaw's alleged criminal activities before the grand jury. Therefore, Metcalf, Mayer, and Faith participated in the decision to prosecute.

9

As for Cross, Verhiley, and Ansari, the Court concludes on *de novo* review that the complaint contains no facts by which one could reasonably infer that these defendants had any part in the decision to prosecute Mr. Ransaw. None of them participated in the controlled buys or took active steps in charging Mr. Ransaw. Their post-arrest conduct, which included sitting in at Mr. Ransaw's proffer, was at most passive or neutral.

As for Lee Lucas, the complaint likewise indicates that he had no involvement in the investigation or prosecution until after Mr. Ransaw was arrested. Lucas's participation thereafter was limited to his grand jury testimony and its preparation. As described above, because a grand jury witness is entitled to absolute immunity, the malicious prosecution claim against Lucas will be dismissed.

Therefore, because Mr. Ransaw's objection as to the malicious prosecution claim is meritorious in part, the Court will reject the Magistrate Judge's recommendation that the claim be dismissed as duplicative of his claim for fabrication of evidence. The malicious prosecution claim shall proceed as to Metcalf, Mayer, and Faith. The claim is dismissed as to the other defendants.

**C. Fabrication of Evidence**

The Magistrate Judge concluded that Mr. Ransaw's cause of action for fabrication of evidence could proceed but only to the extent that it is alleged that defendants Metcalf, Faith, and Mayer provided Lee Lucas with false information that (1) police searching 151 W. 4th St. found both Mr. Ransaw and drugs at that address and that (2) 151 W. 4th St. was Mr. Ransaw's residence. Metcalf, Faith, and Mayer object to this

conclusion on the ground that the complaint does not provide any specific facts showing that any of them provided Lucas with false information.

The objection has no merit. On a motion to dismiss, the Court construes the complaint liberally in favor of the non-moving party. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). To prove a claim of fabrication of evidence, the plaintiff must prove that the defendants knowingly fabricated evidence and that there is a reasonable likelihood that the fabricated evidence affected the outcome of the prosecution. See Stemler v. City of Florence, 126 F.3d 856, 872 (6th Cir. 1997). In this instance, Mr. Ransaw alleges that Lee Lucas testified that investigators found Mr. Ransaw at 151 W. 4th St. together with drugs. He also alleges that Lucas testified that 151 W. 4th St. was Mr. Ransaw's residence. Mr. Ransaw maintains that this testimony was false. He further states that

> one or more of . . . the defendants fabricated evidence of probable cause to arrest and indict Mr. Ransaw . . . by providing Mr. Lucas with incorrect information regarding Mr. Bray and Plaintiff, drafting reports containing false information, providing incorrect information during meetings conducted in preparation of laying charges, and/or falsely testifying on his case before the grand jury.

(Amended complaint, ¶70). In light of these allegations and Metcalf, Faith, and Mayer's role in the investigation of Mr. Ransaw, it is plausible that they fabricated evidence and provided it to Lucas, and that the evidence affected the decision to prosecute. The defendants' objections are accordingly overruled.

As for the fabrication of evidence claims against Cross, Verhiley, and Ansari, the plaintiff offers no meaningful objection to the Magistrate Judge's recommendation that the claims be dismissed. Accordingly, that recommendation is accepted.

11

**D. Fifth Amendment Due Process**

Mr. Ransaw alleges that the federal defendants and the individual state defendants deprived him of due process in violation of the Fifth Amendment when they (1) manufactured incriminating evidence and (2) concealed exculpatory evidence.

The Magistrate Judge first concluded that Mr. Ransaw's claim that the defendants manufactured incriminating evidence is not a cognizable Fifth Amendment violation, pursuant to Albright v. Oliver, 510 U.S. 266 (1994). Mr. Ransaw does not object to this conclusion. The recommendation is accordingly accepted.

The Magistrate Judge also concluded that Mr. Ransaw did not state a claim that due process was violated pursuant to Brady, when the defendants allegedly withheld exculpatory evidence prior to Mr. Ransaw entering into a plea agreement with the government and pleading guilty. The Magistrate Judge recognized a defendant's due process right of disclosure of exculpatory evidence as part of the Constitution's fair trial guarantee, but reasoned that, pursuant to United States v. Ruiz, 536 U.S. 622 (2002), "a defendant has no constitutional right to either exculpatory or impeachment material prior to entering into a plea agreement and pleading guilty." (Doc. 114, p. 33).  The Court agrees with the conclusion of the Magistrate Judge and, as follows, overrules Mr. Ransaw's objections.

First, Mr. Ransaw's contention that Ruiz, a criminal case, does not apply at all in civil proceedings is meritless. Other than citing dicta, not relevant here, of another district court judge, Mr. Ransaw provides no support for this proposition. Moreover, this objection simply revisits an argument already presented to the Magistrate Judge, which she correctly rejected.

12

As for his second objection, Mr. Ransaw argues that the Magistrate Judge erred by concluding that included within Ruiz's scope are both exculpatory evidence and impeachment evidence. The Magistrate Judge correctly determined that Ruiz recognizes no due process right to the disclosure of impeachment evidence in advance of a defendant entering a plea agreement and pleading guilty. However, Mr. Ransaw maintains, contrary to the Magistrate Judge's conclusion, that due process does require disclosure of exculpatory evidence prior to a defendant entering a plea. Mr. Ransaw cites McCann v. Manialardi, 337 F.3d 782 (7th Cir. 2003), in which a panel of the Seventh Circuit stated that

> Ruiz indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence. Given this distinction, it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea.

Id. at 788. The McCann court reached this conclusion based on Ruiz's distinction between impeachment evidence, being of limited value to a defendant, and "critical information of which the defendant must always be aware prior to pleading guilty." Id. at 787. Under McCann, this "critical information" would include a government actor's knowledge of a defendant's factual innocence. Id.

Mr. Ransaw maintains that because Bray's information was the sole evidence that led to Mr. Ransaw's indictment, the evidence that Bray was unreliable was exculpatory in nature. Mr. Ransaw states that had evidence of Bray's unreliability been disclosed to him, he would have refused to plead guilty and would have gone to trial. As a consequence, Mr. Ransaw contends, evidence of Bray's unreliability is the sort of "critical

13

information" described in McCann, the non-disclosure of which would constitute a Brady violation.

The Court disagrees. While it appears Ruiz does not foreclose the possibility of a Brady violation where a prosecutor fails to disclose exculpatory information prior a guilty plea, Mr. Ransaw does not make a plausible case that such a Brady violation occurred here. McCann stated that a government actor likely violates due process by failing to disclose knowledge of a defendant's "factual innocence" before the defendant enters a guilty plea. Id. at 788. In the present case, Mr. Ransaw does not allege that any government actor had knowledge of Mr. Ransaw's factual innocence. And, as noted repeatedly by the Magistrate Judge, Mr. Ransaw does not deny that he committed the crimes for which he was ultimately convicted. The allegations challenging Bray's reliability go to his credibility, and thus involve impeachment evidence, the disclosure of which is not required under Ruiz. Under the present facts, Mr. Ransaw provides no authority that would allow him to maintain a Brady claim. The objection is overruled.

### E. Conspiracy Claims

Mr. Ransaw brings claims of conspiracy to violate his constitutional rights against all defendants. Magistrate Judge Vecchiarelli concluded that Mr. Ransaw's conspiracy claim against the federal defendants should be dismissed. The Magistrate Judge concluded that the claims against the state defendants should proceed.

In reaching this conclusion, Magistrate Judge Vecchiarelli noted that in order to state a claim for civil conspiracy under Section 1983, a plaintiff must show that there was a "single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that

14

caused injury to the complainant." Heyne v. Metropolitan Nashville Public Schools, 655 F.3d 556, 564 (6th Cir. 2011). The Magistrate Judge concluded that Mr. Ransaw sufficiently pleaded that there was a single plan and that the alleged co-conspirators shared in the general conspiratorial objective. However, in the Magistrate Judge's opinion, Mr. Ransaw failed to allege facts to demonstrate any overt act in furtherance of the conspiracy on the part of the federal defendants. The Magistrate Judge also concluded that the only factual allegation that demonstrated overt acts on the part of the state defendants was that they provided Lee Lucas with fabricated evidence that Mr. Ransaw was found at 151 W.4th St. and that 151 W.4th St. was his residence.

The Court will accept in part and reject in part these recommendations. The Magistrate Judge correctly concluded that Mr. Ransaw pled insufficient facts to demonstrate any overt acts on the part of the federal defendants. Mr. Ransaw offers no meaningful objection to this recommendation. Further, as discussed above, Mr. Ransaw has pled no facts by which he can maintain either malicious prosecution or fabrication of evidence claims against Cross, Verhiley, Ansari, and Lee. Therefore, the corresponding conspiracy claims against these defendants will be dismissed.

The Court also agrees with the conclusion that Mr. Ransaw sufficiently pleaded an overt act by alleging that Metcalf, Faith, and Mayer provided fabricated evidence to Lee Lucas. The defendants' objection on this point has no merit. They contend that the complaint is fatally lacking in specificity with regards to whether they provided Lucas with false information. The Court disagrees. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. In this instance, Mr. Ransaw alleges that

the defendants "provid[ed] Mr. Lucas with incorrect information regarding Mr. Bray and Plaintiff, draft[ed] reports containing false information, [and] provid[ed] incorrect information during meetings conducted in preparation of laying charges. . . ." Further, Mr. Ransaw details the specific falsehoods that were related to Mr. Lucas. Under Iqbal/Twombly, these allegations are sufficient to put Metcalf, Faith, and Mayer on notice of the claim against them. Their objections are overruled.

The Court only disagrees with the Magistrate Judge's conclusions as to the plaintiff's conspiracy claim in one respect. It was the Magistrate Judge's opinion that the only overt acts stated sufficiently in the complaint related to the allegations that Metcalf, Faith, and Mayer provided fabricated evidence to Lee Lucas. However, it is the Court's view that the conspiracy claim may proceed on an additional ground, namely that these defendants prosecuted Mr. Ransaw without probable cause. As discussed above, Mr. Ransaw sufficiently stated a claim for malicious prosecution against Metcalf, Faith, and Mayer. The factual underpinnings of this claim also satisfy the overt act element of the plaintiff's conspiracy claim. Therefore, the plaintiff's conspiracy claim against Metcalf, Faith, and Mayer may proceed on the ground that he was malicously prosecuted without probable cause.

### F. State Law Causes of Action

The Magistrate Judge concluded that the plaintiff's claims under state law for false imprisonment, false arrest, and malicious prosecution are barred by the applicable statutes of limitations. The plaintiff does not object to this conclusion. The recommendation that these claims be dismissed is accordingly accepted.

The Magistrate Judge also recommended that the plaintiff's claim for intentional infliction of emotional distress be allowed to go forward. She noted that the statute of limitations for this claim is four years. Crist v. Pugin, 2008 WL 2571229, at *1-2 (N.D. Ohio 2008). However, "when the acts underlying the claims would support liability pursuant to another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress." Id. A four-year limitation period applies to "claims . . . based on facts so extreme in character that they not only establish the conventional tort, but constitute intentional conduct which is "extreme and outrageous' as well." Presti v. Ahrens, 1988 WL 122934, at *7 (Ohio Ct. App. 1988). In this instance, the Magistrate Judge indicated that the plaintiff's claims of false arrest and malicious prosecution underlie the intentional infliction of emotional distress claim. But, she concluded that because Mr. Ransaw alleged facts in support of those claims that are "extreme and outrageous," the four-year limitation period should apply.

Metcalf, Faith, and Mayer object to this conclusion. They maintain that the intentional infliction of emotional distress claim simply restates the allegations underlying the false arrest and malicious prosecution claims. The Court agrees. As the Presti court explained:

> the requirement of 'extreme and outrageous' conduct necessary to the tort of intentional infliction of emotional distress is not established simply by ordinary tortious or even criminal activity. If that were the case, untimely claimants for any sort of intentionally tortious actions could easily subvert an applicable statute of limitations simply by entitling their action as one for intentional infliction of emotional distress. This would clearly contravene the legislative authority which has limited certain actions to be brought within specified times. Thus, if the set of facts complained of gives rise to a conventional tort action for which the legislature has clearly delineated a statute of limitations, the claim should usually be governed by that statute.

17

> Nevertheless, we recognize that certain claims, although susceptible to a conventional cause of acton (sic) in tort, can be based upon facts so extreme in character that they not only establish the conventional tort, but constitute intentional conduct which is 'extreme and outrageous' as well. A battery, for example, which amounts to a form of torture, or a particularly diabolical false imprisonment, might establish a complaint which overlaps the conventional tort and intentional infliction of emotional distress. In such cases, a claimant should be permitted the full four-year limitation period applicable to actions for intentional infliction of emotional distress.

Presti v. Ahrens, 54620, 1988 WL 122934 (Ohio Ct. App. Nov. 17, 1988) (quoting Pournaras v. Pournaras, 49936, 1985 WL 4613 (Ohio Ct. App. Dec. 19, 1985)).

In this instance, Mr. Ransaw pleads facts that may be alarming, but in the Court's view, the allegations do not rise above those that would support the conventional torts of malicious prosecution and false arrest. As explained in Presti, it is not enough to plead facts sufficient to support a conventional tort. There must be something more – something "extreme and outrageous" – that sets the allegations apart. In this case, the complaint offers nothing in addition to support the intentional infliction of emotional distress claim. Therefore, finding the defendants' objection meritorious, the Court rejects the recommendation that a four-year statute of limitations should apply in this instance. Because Mr. Ransaw filed the complaint after the applicable one-year limitations period, the claim is dismissed.

### G. Municipal Liability

The Magistrate Judge concluded that Mr. Ransaw sufficiently pled a cause of action pursuant to Monell against Richland County. Richland County objects, arguing that because the plaintiff pleads no facts to support the allegation that Richland County pursues unconstitutional convictions as a matter of custom or policy, the Monell claim against it must fail. The Court agrees. "To merely state that the City has a policy or

custom is not enough; Plaintiff must allege facts, which if true, demonstrate the [county]'s policy." Williams v. City of Cleveland, 1:09CV1310, 2009 WL 2151778 (N.D. Ohio July 16, 2009). In this instance, the plaintiff has pled no such facts. Therefore, the Magistrate Judge's recommendation will not be followed, and the Monell claims against Richland County are dismissed.

The Magistrate Judge concluded that the Monell claims against the City of Cleveland via defendant Ansari should be dismissed because the plaintiff failed to sufficiently allege a plausible constitutional claim against defendant Ansari. The Court agrees. As explained above, the plaintiff alleged no facts by which it might be reasonably inferred that defendant Ansari was involved in any constitutional wrongdoing in this matter. The Magistrate Judge's recommendation is accordingly accepted, and the Monell claims against the City of Cleveland are dismissed.

### IV. Conclusion

For the reasons stated above, the Magistrate Judge's recommendation is accepted in part. Metcalf's, Mayer's, and Faith's motions to dismiss are denied with respect to Mr. Ransaw's § 1983 claims of malicious prosecution, fabrication of evidence, and conspiracy. The motions to dismiss are granted with respect to all other claims and defendants.

IT IS SO ORDERED.

    /s/ Lesley Wells
    UNITED STATES DISTRICT JUDGE

Date: 25 November 2013